## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  10-32769

LINGHAM RAWLINGS, LLC

Debtor

## MEMORANDUM ON DEBTOR'S
## <u>MOTION TO USE CASH COLLATERAL</u>

**APPEARANCES:**   THE RITCHIE LAW FIRM, P.C.
Keith L. Edmiston, Esq.
607 Market Street
Suite 1100
Knoxville, Tennessee  37902
Attorneys for Debtor

PROCHASKA THOMPSON QUINN & FERRARO, P.C.
Joseph R. Prochaska, Esq.
401 Church Street
Suite 2600
Nashville, Tennessee  37219
Attorneys for Square Mile Capital Management, LLC

RICHARD F. CLIPPARD, ESQ.
UNITED STATES TRUSTEE
Patricia C. Foster, Esq.
Howard H. Baker, Jr. United States Courthouse
800 Market Street
Suite 114
Knoxville, Tennessee  37902
Attorneys for United States Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Emergency Motion of Debtor-in-Possession for Authority to Use Cash Collateral (Motion for Use of Cash Collateral) filed on June 10, 2010, by the Debtor-in-Possession, and the Objection of BACM 2001-1 Kingston Pike Retail, LLC, a Delaware Limited Liability Company to Debtor's Motion to Use Cash Collateral (Objection) filed by BACM 2001-1 Kingston Pike Retail, LLC, on June 17, 2010.

All facts and documents essential to the resolution of the Motion for Use of Cash Collateral are before the court on the Stipulations of Fact in Connection With the Debtor's Motion to Use Cash Collateral and the Objection of Lender Thereto, together with Exhibits A, B, and C (collectively, Stipulations) filed by the parties on August 2, 2010. The Memorandum of Law in Support of Objection of Lender to Debtor's Motion to Use Cash Collateral was filed by Square Mile Capital Management, LLC (Lender) on August 2, 2010, and the Reply of Lingham Rawlings, LLC in Opposition to Objection of BACM 2001-1 Kingston Pike Retail, LLC, to Debtor's Motion to Use Cash Collateral was also filed on August 2, 2010.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (M), and (O) (2006).

## I

On February 26, 2001, the Debtor executed an Amended and Restated Promissory Note Secured by Deed of Trust (Note) in favor of Bridger Commercial Funding LLC, in the amount of $2,000,000.00. STIP. EX. A. The Debtor secured the Note by a Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated February 26, 2001, (Deed of Trust and Assignment of Rents) by which it pledged as collateral the real property

and other rights relating to its primary asset, a shopping center located at 7212 Kingston Pike, Knoxville, Tennessee (Shopping Center).  STIP. EX. B.  Pursuant to Article 3 of the Deed of Trust and Assignment of Rents, titled "Absolute Assignment of Rents and Leases," the Debtor "irrevocably" assigned to the Lender its "right, title and interest" in all leases, rents and revenues from the Shopping Center.  STIP. EX. B.  Additionally, Article 3 grants the Debtor a "revocable license" to use the rents and revenues.  STIP. EX. B.  By a letter dated September 25, 2009, the Debtor was notified of its default under the terms of the Note and given written notice that the balance had been accelerated and the license authorizing it to collect the revenues had thus been automatically terminated.  STIP. EX. C.  The parties stipulated that the Deed of Trust and Assignment of Rents has since been assigned to Square Mile Capital Management, LLC, and that, as of the June 8, 2010 filing date, the Debtor is obligated to Square Mile Capital Management, LLC under the Note for a sum in excess of $1,900,000.00.

The Debtor filed the Voluntary Petition commencing its Chapter 11 bankruptcy case on June 8, 2010.  Its primary asset is the Shopping Center.  On June 10, 2010, the Debtor filed the Motion for Use of Cash Collateral, requesting, *inter alia*, the authority to use rents generated by the Shopping Center.

## II

The issue before the court is whether the Deed of Trust and Assignment of Rents constituted an absolute assignment of the rents generated by the Shopping Center thereby requiring a finding that the rents are not property of the estate.  Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case [including

3

p]roceeds, product, offspring, rents, or profits of or from property of the estate[.]"  11 U.S.C.

§ 541(a)(1), (6) (2006).  Nevertheless, although rents are included within the definition of property

of the estate, when a debtor has executed an absolute assignment of rents in favor of another party,

the subject rents are not property of the estate.  *In re Kingsport Ventures, L.P.*, 251 B.R. 841, 848-49

(Bankr. E.D. Tenn. 2000).

   "Assignments of rents are interests in real property requiring an examination of the details

of their creation and a definition in accordance with law of the situs of the property or state law

where the property is located."  *In re 5877 Poplar, L.P.*, 268 B.R. 140, 146 (Bankr. W.D. Tenn.

2001).

>    "Under Tennessee law, an assignment of rents is presumed to be a pledge of rents as
>    security"[; however, t]he presumption is not conclusive and may be rebutted with
>    evidence that the assignment of rents was an absolute assignment rather than a pledge
>    of security. . . . Statements within the assignment that the assignment was intended
>    to secure a debt is strong evidence that the assignments are in fact a pledge of
>    security, even if the assignment is referred to as "absolute."

*Kingsport Ventures*, 251 B.R. at 846-47 (quoting *In re Harbour Town Assocs., Ltd.*, 99 B.R. 823,

824 (Bankr. M.D. Tenn. 1989)).  Nevertheless, "an absolute assignment divests the assignor of any

legal right in the subject property as of the date of the assignment and vests those rights in the

assignee."  *Kingsport Ventures*, 251 B.R. at 848 (citing *Nashville Trust Co. v. First Nat'l Bank*, 134

S.W. 311, 314 (Tenn. 1911)).

   A "determination of whether an assignment of rents is absolute or merely a pledge of security

requires a through analysis of the language and provisions of the assignment" and the court must

closely examine the terms of the assignment as a whole.  *5877 Poplar, L.P.*, 268 B.R. at 146.  First,

4

it must be ascertained whether "the language of the Assignment is clear and unambiguous in its statement [evidencing] that it was 'intended by Assignor . . . [to] constitute[] a present, absolute and unconditional assignment and not an assignment for additional security only.'" *Kingsport Ventures,* 251 B.R. at 848. Next, the court must determine whether the debtor retains only "a revocable license to operate the . . . property and collect the rents." *Kingsport Ventures,* 251 B.R. at 848. Third, the focus must be upon what happens in the event of default and whether, under the assignment, the assignee is required "to take any action in order to collect the rents" and is given "total discretion regarding the application of rents collected by it . . . to reduce the [d]ebtor's outstanding obligation." *Kingsport Ventures,* 251 B.R. at 848. Testimony to the contrary does not change the result; courts "must enforce [an] Assignment as it is written[,] look[ing] to the intent as it is embodied in the contract rather than the state of mind of the party executing the contract." *Kingsport Ventures,* 251 B.R. at 848.

In order to determine if the Deed of Trust and Assignment of Rents between the Debtor and Square Mile Capital Management, LLC, as successor in interest, was an absolute assignment rather than the granting of a security interest, the court "must analyze the language and provisions of the assignment" and if statements within the document evidence that it was, in fact, the parties' intent that the assignment serve as the pledge of a security interest, those statements will control, and the rents will be considered property of the bankruptcy estate. *Kingsport Ventures*, 251 B.R. at 847. On the other hand, if the document clearly evidences that the parties intended to create an absolute assignment, the Debtor will not have any residual interest in the rents in question. *Kingsport*

*Ventures*, 251 B.R. at 847-48.  Here, the Deed of Trust and Assignment of Rents reads, in material

part, as follows:

3.1  <u>Assignment</u>.  Trustor irrevocably assigns to Beneficiary all of Trustee's rights, title and interest in, to and under: (a) all present and future leases of the Property or any portion thereof, all licenses, agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses, and agreements are now existing or entered into after the date hereof ("Leases"); and (b) the rents, issues, deposits and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("Payments").  The term Leases shall also include all Guarantees of and security for the tenants' performance thereunder, and all amendments, extensions, renewals, or modifications thereto which are permitted hereunder.  This is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

3.2  <u>Grant of License</u>.  Beneficiary confers upon Trustor a revocable license ("License") to collect and retain the Payments as they become due and payable, until the occurrence of a Default (as hereinafter defined).  Upon a Default, the License shall be automatically revoked and Beneficiary may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property.  All Payments thereafter collected by Trustor shall be held by Trustor as trustee under a constructive trust for the benefit of Beneficiary.  Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Default has actually occurred or is then existing.  Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice or demand by Beneficiary.  Beneficiary may apply, in its sole discretion, any Payments so collected by Beneficiary against any Secured Obligation or any other obligation of Borrower, Trustor or any other person or entity, under any document or instrument related to or executed in connection with the Loan Documents, whether existing on the date hereof or hereafter arising.  Collection of any Payments by Beneficiary shall not cure or waive any Default or notice of Default or invalidate any acts done pursuant to such notice.

3.3  <u>Effect of Assignment</u>.  The foregoing irrevocable assignment shall not cause Beneficiary to be:  (a) a mortgagee in possession; (b) responsible or liable for the

6

control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; (c) responsible or liable for any waste committed on the Property by the tenants under any of the Leases or by any other parties for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or other person; or (d) responsible for or impose upon Beneficiary any duty to produce rents or profits.  Beneficiary shall not directly or indirectly be liable to Trustor or any other person as a consequence of: (e) the exercise or failure to exercise any of the rights, remedies or powers granted to Beneficiary hereunder; or (f) the failure or refusal of Beneficiary to perform or discharge any obligation, duty or liability of Trustor arising under the Leases.

3.4    <u>Covenants</u>.

      (a)    <u>All Leases</u>.  Trustor shall, at Trustor's sole cost and expense:

           (i) perform all obligations of the landlord under the Leases and use reasonable efforts to enforce performance by the tenants of all obligations of the tenants under the Leases;

           (ii) use reasonable efforts to keep the Property leased at all times to tenants which Trustor in good faith believes are creditworthy, at rents not less than the fair market rental value (including, but not limited to, free or discounted rents to the extent the market so requires);

           (iii) promptly upon Beneficiary's request, deliver to Beneficiary a copy of each requested Lease and all amendments thereto and waivers thereof; [and]

           (iv) promptly upon Beneficiary's request, execute and record any additional assignments of landlord's interest under any Lease to Beneficiary and specific subordinations of any Lease to this Deed of Trust, in form and substance satisfactory to Beneficiary[.]

      . . . .

3.5    <u>Right of Subordination</u>.  Beneficiary may at any time and from time to time by specific written instrument intended for the purpose unilaterally subordinate the lien of this Deed of Trust to any Lease, without joinder or consent of, or notice to, Trustor, any tenant or any other person.  Notice is hereby given to each tenant under a Lease of such right to subordinate.  No subordination referred to in this Section shall constitute a subordination to any lien or other encumbrance, whenever arising,

7

or improve the right of any junior lienholder.  Nothing herein shall be construed as subordinating this Deed of Trust to any Lease.

. . . .

7.1  <u>Default</u>.  For all purposes hereof, "Default" shall mean either an "Optional Default" (as defined below) or an "Automatic Default". . .[.]

   (a) <u>Optional Default</u>.  An "Optional Default" shall occur, at Beneficiary's option, upon the occurrence of any of the following events:

      (i) <u>Monetary</u>.  Borrower or Trustor shall fail to (aa) pay when due any sums which by their express terms require immediate payment without any grace period or sums which are payable on the Maturity Date, or (bb) pay within five (5) days when due any other sums payable under the Note, this Deed of Trust or any of the other Loan Documents, including, without limitation, any monthly payment due under the Note.

      . . . .

7.2  <u>Acceleration</u>.  Upon the occurrence of an Optional Default, Beneficiary may, at its option, declare all sums owing to Beneficiary under the Note and the other Loan Documents immediately due and payable. . . .

7.3  <u>Rights and Remedies</u>.  In addition to the rights and remedies in Section 7.2 above, at any time after a Default, Beneficiary and Trustee shall each have the following rights and remedies:

   (a) <u>Entry on Property</u>.  With or without notice, and without releasing Trustor from any Secured Obligation, and without becoming a mortgagee in possession, to enter upon the Property from time to time and to do such acts and things as Beneficiary or Trustee deem necessary or desirable in order to inspect, investigate, assess and protect the security hereof or to cure any Default, including, without limitation:  (i) to take and possess all documents, books, records, papers and accounts of Trustor, Borrower or the then owner of the Property which relate to the Property; (ii) to make, terminate, enforce or modify Leases of the Property upon such terms and conditions as Beneficiary deems proper; (iii) to make repairs, alterations and improvements to the Property necessary, in the Trustee's or Beneficiary's sole judgment, to protect or enhance the security hereof; (iv) to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee hereunder; (v) to pay, purchase, contest or

8

compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Beneficiary or Trustee, is or may be senior in priority hereto, the judgment of Beneficiary or Trustee being conclusive, as between the parties hereto; (vi) to obtain insurance; (vii) to pay any premiums or charges with respect to insurance required to be carried hereunder; and/or (viii) to employ legal counsel, accountants, engineers, consultants, contractors and other appropriate persons to assist them;

. . . .

(f) Rights to Collateral. To exercise all rights Trustee or Beneficiary may have with respect to the Collateral under this Deed of Trust, the UCC or otherwise at law; and

(g) Other Rights. To exercise such other rights as Trustee or Beneficiary may have at law or in equity or pursuant to the terms and conditions of this Deed of Trust or any of the other Loan Documents.

. . . .

7.6 No Cure or Waiver. Neither Beneficiary's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, leases, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collateral sum to any Secured Obligation, nor the exercise of any other right or remedy by Beneficiary or Trustee or any receiver shall cure or waive any Default or notice of default under this Deed of Trust, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid or performed and Trustor has cured all other defaults hereunder), or impair the status of the security, or prejudice Beneficiary or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Beneficiary of any tenancy, lease or option or a subordination of the lien of this Deed of Trust.

7.7 Payment of Costs, Expenses and Attorneys' Fees. Trustor agrees to pay to Beneficiary immediately and upon demand all costs and expenses incurred by Trustee and Beneficiary in the enforcement of the terms and conditions of this Deed of Trust (including, without limitation, statutory trustee's fees, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest applicable to the principal balance of the Note as specified therein.

7.8 Power to File Notices and Cure Defaults. Trustor hereby irrevocably appoints Beneficiary and its successors and assigns as its attorney-in-fact, which power of

attorney is coupled with an interest, to perform any obligation of Trustor hereunder upon the occurrence of an event, act or omission which, with notice or passage of time or both, would constitute a Default, provided, however, that:  (i) Beneficiary as such attorney-in-fact shall only be accountable for such funds as are actually received by Beneficiary, and (ii) Beneficiary shall not be liable to Trustor or any other person or entity for any failure to act under this Section.

7.9   <u>Remedies, Cumulative</u>.  All rights and remedies of Beneficiary and Trustee provided hereunder are cumulative and are in addition to all rights and remedies provided by applicable law (including specifically that of foreclosure of this instrument as though it were a mortgage) or in any other agreements between Trustor and Beneficiary.  Beneficiary may enforce any one or more remedies or rights hereunder successively or concurrently.

. . . .

8.2   <u>Non-Waiver</u>.  By accepting payment of any amount secured hereby after its due date or late performance of any other Secured Obligation, Beneficiary shall not waive its right against any person obligated directly or indirectly hereunder or on any Secured Obligation, either to require prompt payment or performance when due of all other sums and obligations so secured or to declare default for failure to make such prompt payment or performance.  No exercise of any right or remedy by Beneficiary or Trustee hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law.  No failure by Beneficiary or Trustee to exercise any right or remedy hereunder arising upon any Default shall be construed to prejudice Beneficiary's or Trustee's rights or remedies upon the occurrence of any other or subsequent Default.  No delay by Beneficiary or Trustee in exercising any such right or remedy shall be construed to preclude Beneficiary or Trustee from the exercise thereof at any time while that Default is continuing.  No notice to nor demand on Trustor shall of itself entitle Trustor to any other or further notice or demand in similar or other circumstances.

. . . .

8.17   <u>Governing Law</u>.  This Deed of Trust, the Note and the other Loan Documents and the obligations arising hereunder and thereunder shall be governed by, and construed in accordance with, the laws of the State of Tennessee applicable to contracts made and performed in such State and any applicable law of the United States of America.  Except as provided in the immediately preceding sentence, Trustor hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than Tennessee governs the Deed of Trust, the Note and other Loan Documents.

Stip. Ex. B.

The terms of the Deed of Trust and Assignment of Rents are clear and unambiguous, regardless of any arguments by the Debtor that its intentions were to the contrary.  Section 3.1 states that "Trustor irrevocably assigns to Beneficiary all of Trustee's rights, title and interest in [and] to" the rents and that it "is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property."  Stip. Ex. B.  Section 3.2 then grants the Debtor merely a revocable license to collect and hold the rents, in trust, for the benefit of the Beneficiary, i.e., Square Mile Capital Management, LLC.  Stip. Ex. B.  That same section also provides that Square Mile Capital Management, LLC is entitled to the rents upon the Debtor's default without any required action, and it is given sole discretion to apply the rents against the secured debt.

The Debtor urges the court to take all of the statements in the various documents as proof that it intended for the Assignment of Rents to be merely the grant of a security interest and not an absolute assignment, arguing that because a default was required before the license could be revoked and any remedies triggered evidences that the parties intended a security agreement rather than an absolute assignment of rents, and that the only consideration for granting the assignment of rents was receipt of the loan proceeds.  The Debtor also argues that if the assignment of rents is absolute, § 541(a)(6), which includes "proceeds, product, offspring, rents, or profits" of estate property within the bankruptcy estate, is rendered superfluous.  Finally, the Debtor argues that relying on state law to determine whether rents collected post-petition are property of the estate runs afoul of the Constitution's Bankruptcy Clause.

11

Unlike the assignment at issue in *5877 Poplar, L.P.*, relied upon by the Debtor, the Deed of Trust and Assignment of Rents here does not, within Article 3, grant the lender a security interest in the rents. *See 5877 Poplar, L.P.*, 268 B.R. at 147. Instead, the Deed of Trust and Assignment of Rents unequivocally states that it "is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent upon, and may be exercised without possession of the Property." STIP. Ex. B. As with the assignment in *Kingsport Ventures*, the Deed of Trust and Assignment of Rents divests the Debtor of any legal right in the rents to be paid to Square Mile Capital Management, LLC, and any equitable rights the Debtor may have in the rents is subordinate to the rights of Square Mile Capital Management, LLC. "Accordingly, the [Debtor] cannot assert those rights against [Square Mile Capital Management, LLC] and cannot reclaim the subject property based on any such equitable right as long as the related debt is outstanding." *Kingsport Ventures*, 251 B.R. at 849. Section 541(a)(6) is not rendered superfluous; rather, it is not triggered because the rents are not property of the bankruptcy estate.[1]

---

[1] The Debtor also relies upon *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009), urging the court to find that, because the Shopping Center is property of the estate, the post-petition rents derived therefrom are likewise property of the estate under § 546(a)(6). This determination in *Amaravathi* does not, however, conflict with the holding in *Kingsport Ventures*. In both cases, the determination turns on whether, under state law, the respective debtors held any legal or equitable interests in the rents at issue, and after applying Texas law, the *Amaravathi* court concluded that the debtors in that case retained an equitable interest, whereby the rents could be used as cash collateral. *See Amaravathi Ltd. P'ship*, 416 B.R. at 628, 637.

Moreover, application of Tennessee law does not run afoul of the Bankruptcy Clause authorizing Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8, cl. 4. This issue has been addressed by the Supreme Court which found that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law[,]" and held the following:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Mfrs. Nat'l Bank*, 81 S. Ct. 347, 350 (1961). The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Butner v. United States*, 99 S. Ct. 914, 918 (1979).

The Deed of Trust and Assignment of Rents executed by the Debtor on February 26, 2001, was an absolute assignment. Accordingly, as of that date, "[the Debtor] had no legal right to that property[, and any] equitable right that it may have in the property is subordinate to and cannot be asserted against [Square Mile Capital Management, LLC] until its debt to [Square Mile Capital Management, LLC] is satisfied." *Kingsport Ventures*, 251 B.R. at 849. Since the Debtor has no legal or equitable interest in the rents under Tennessee law, these rents are not property of the estate, and the Motion for Use of Cash Collateral must, therefore, be denied.

13

An order consistent with this Memorandum will be entered.

FILED:  September 1, 2010

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE